RICHMOND CEDAR WORKS v. T. H. SHEPARD ET AL.

(Filed 23 February, 1921.)

1. **Deeds and Conveyances — Delivery — Payment of Purchase Price — Equity—Estates—Evidence.**

Where a grantee in a deed necessary to establish plaintiff's chain of title has died before delivery of the deed, it is necessary for his heirs at law to successfully claim an equitable estate in the lands covered by the deed, to establish payment by their ancestor by sufficient evidence, and in the absence of a finding thereon, it cannot be so declared as a matter of law.

2. **Deeds and Conveyances—Tax Deeds—Affidavits—Presumptions—Statutes.**

Under the provisions of ch. 137, sec. 70, Public Laws of 1887, it is required that a purchaser at the sheriff's sale of land for taxes show, by affidavit, a compliance with the provisions of the statute, and present it to the one authorized by law to execute the tax deed, and by such officer delivered to the register of deeds for entry of record, which must be by evidence outside the deed, and there being no presumption under section 74 of said chapter that this has been done, in the absence of such proof, the purchaser acquires no title.

3. **Same.**

Sections 60, 70, and 71 of the acts of 1887, relating specifically to matters and things required to be done by the purchaser at a tax sale, to perfect his title to the lands, are omitted by the act of 1889, while sec. 74 of

the former act, relating to presumptions, is expressly brought forward with practically no modifications, and hence a tax deed made under the provisions of the act of 1889 is valid without proof of the affidavit, etc., required by the act of 1887.

4. **Deeds and Conveyances—Tax Deeds—County.**

A sheriff's deed to land sold for the nonpayment of taxes lying within his own and an adjoining county is valid only as to so much of the land as lies within his own county, and of no effect beyond its boundary.

5. **Deeds and Conveyances—State Board of Education—State's Lands—Grants.**

Where the plaintiff claims lands under a deed from the State Board of Education executed in 1904, and *mesne* conveyances, and it appears that the State had granted it to others in 1784 and 1792, his title will fail, for the deed from the State Board of Education has no legal effect when State grants covering the same lands are shown to have been issued prior to 1825. *Weston v. Lumber Co.*, 162 N. C., 165, cited as controlling.

APPEAL from *Calvert, J.*, at November Term, 1920, of PASQUOTANK.

This action was brought under sec. 1589 of the Revisal, now sec. 1743, Consolidated Statutes, and involves the ownership of three tracts of land situate in the counties of Pasquotank, Perquimans, and Gates. The case is submitted on facts agreed, from which it appears plaintiff claims title under three independent sources, as follows:

1. The first originates with four grants, issued 27 October, 1784, to Jonathan Herring, and with which plaintiff seeks to connect itself by *mesne* conveyances.

Under this claim, two deeds, necessary links in plaintiff's chain of title, are attacked by the defendants as invalid: one a deed of date 6 September, 1853, from Ehringhaus, clerk and master, to Joseph Pritchard, purporting to have been executed under the authority of a decree in a special proceeding to sell said lands for partition, instituted by William B. Shepard, and the heirs of Ann Pettigrew at Spring Term, 1850, of Pasquotank County Court of Equity; the other a certain paper-writing, dated 6 March, 1854, purporting to be a deed from James Taylor, administrator of Joseph Pritchard, to Matchett Taylor.

It is admitted that Joseph Pritchard died prior to the date of execution of the clerk and master's deed, but plaintiff contends that if said deed be void for this reason, the heirs of Joseph Pritchard would be vested with an equitable estate upon proof of payment of the purchase price bid at the sale. To establish such payment, which is not admitted, plaintiff relies upon the record, evidence tending to show that the lands were ordered to be sold for $1,200 on credit, but the acknowledgment recited in said deed is "four hundred dollars to me in hand secured to be paid at the time of the said sale by him the said Joseph Pritchard."

2. Plaintiff's second claim is founded upon four tax deeds, purporting to have been executed by the sheriffs of Pasquotank County for unpaid taxes due upon said lands for the years 1887, 1888, and 1889. These deeds are attacked by the defendants; and, there being no evidence *ultra* on the record, their validity must be determined by the presumptions of their recitals as construed under the acts regulating the sale of lands for nonpayment of taxes for said years.

It is admitted that the records of Pasquotank County fail to disclose any affidavit from the purchaser, or any one on its behalf, made at the time of, or prior to, the execution of the paper-writings purporting to be deeds from the sheriff of Pasquotank County to the John L. Roper Lumber Company, purchaser at the tax sale, and plaintiff's grantor.

3. The plaintiff's third source is derived from an alleged deed of date 24 October, 1904, executed by the State Board of Education of North Carolina to George W. Roper, but it is admitted that on 27 December, 1792, a grant for the lands in controversy was issued to John Hamilton, whose title, by *mesne* conveyances, passed to William Shepard.

It is stipulated that if upon the facts agreed the court is of opinion, as a matter of law, the plaintiff is the owner of the lands in controversy, or any part thereof, and has the right to maintain this action, then judgment shall be entered accordingly, declaring the plaintiff to be the owner and entitled to the possession of said lands, or part thereof; otherwise, judgment to be entered declaring the defendants, T. H. Shepard, Mrs. William Graham, and Mrs. Louise McConnell, the owners and entitled to the possession of said lands, or such part thereof as plaintiff may fail to recover.

His Honor, being of opinion that plaintiff's only valid source of title was derived from the tax deeds, entered judgment in its favor for that portion of the lands in controversy lying wholly within the boundaries of Pasquotank County, and adjudged the defendants to be the owners of that portion of said lands lying outside the limits of said county.

Plaintiff and defendants excepted, and appealed.

*Thompson & Wilson for plaintiff.*
*Meekins & McMullan for defendants.*

STACY, J. The validity of the plaintiff's first claim of title was before this Court in the case of *Thompson v. Lumber Co.,* 168 N. C., 226. It was there decided that the clerk and master's deed to Joseph Pritchard was void for want of delivery, the grantee being dead at the time of its execution, but it was suggested that upon proof of payment of the purchase price, bid at the sale, an equitable estate would inure to the heirs of the purchaser. There are some circumstances tending to

show payment, but the evidence is not conclusive, and the fact is not admitted. In the absence of such finding, or sufficient evidence to establish payment, it cannot be said, as a matter of law, to have been made. Hence, no equitable estate has been established as vesting in the heirs of the purchaser.

The plaintiff having failed to show any legal title in Joseph Pritchard, or equitable estate in his heirs, it becomes unnecessary to consider again the alleged deed from James Taylor, administrator of Joseph Pritchard, to Matchett Taylor. *Thompson v. Lumber Co., supra.*

Plaintiff's second claim of title is based upon four tax deeds purporting to have been executed by the sheriffs of Pasquotank County for taxes due on said lands and unpaid for the years 1887, 1888, and 1889. These deeds contain the usual recitals—three of them having been executed under authority of the Laws of 1887 for taxes presumably due and unpaid for the years 1887 and 1888; and said deeds purport to convey two tracts of 140 acres and 1,700 acres, respectively. The fourth tax deed was executed under authority of the Laws of 1889 for taxes presumably due and unpaid for said year, and the same purports to convey 399 acres situate partly in the county of Pasquotank and partly in Perquimans County.

The power to sell real estate for delinquent taxes and the authority of the sheriff or tax collector to issue a tax deed to the purchaser is a matter of statutory right, and can be exercised only in conformity with the law under which it is given. 37 Cyc., 1280.

By reference to chapter 137, Public Laws of 1887, it will be seen (sec. 70) that before any purchaser at a sale of land for taxes acquired the right to call for a deed, it was necessary for him to make an affidavit, showing his compliance with the requirements of the statute, and present same to the person authorized by law to execute such tax deed; and, by such officer, it was to be delivered to the register of deeds for entry on the records of his office and for safe-keeping. Section 74 of said chapter provides that the sheriff's deed shall be presumptive evidence as to some of the things required to be done, and conclusive evidence as to some of the others. But there is no presumption that the purchaser executed and presented the necessary affidavit. This must be established by evidence outside of the deed; and in the absence of such proof, the purchaser acquires no title. *King v. Cooper,* 128 N. C., 347; *Matthews v. Fry,* 141 N. C., 582; *Warren v. Williford,* 148 N. C., 474; *Rexford v. Phillips,* 159 N. C., 213.

It is admitted that the records of Pasquotank County fail to disclose any affidavit from the purchaser, or any one on its behalf, made at the time of or prior to the execution of the tax deeds; and there is no other evidence tending to show its alleged loss or destruction, or that it ever

existed. Thus failing to prove the making and presentation of the requisite affidavit, the plaintiff can derive no benefit from the three tax deeds purporting to have been executed under authority of the Laws of 1887, for taxes assessed and unpaid for the years 1887 and 1888.

But with respect to the fourth tax deed, executed under authority of chapter 218, Public Laws of 1889, for delinquent taxes due for said year, we conceive the law to be somewhat different. Sections 69, 70, and 71 of the act of 1887, relating specifically to matters and things required of the purchaser at the tax sale, are omitted from the act of 1889; while section 74, touching the matter of presumptions, is expressly brought forward with practically no modification. *Saunders v. Earp,* 118 N. C., 275; *King v. Cooper,* 128 N. C., 347.

Therefore, under this latter act, by reason of the changed requirements and virtually unchanged presumptions, and from the facts agreed, it would appear that the plaintiff's deed is valid as to that portion of the 399-acre tract lying wholly within the boundaries of Pasquotank County. The sheriff, however, was without authority to sell the lands situate beyond the limits of his own county (37 Cyc., 129; 26 R. C. L., 269), and as to that portion of the 399-acre tract lying in Perquimans County plaintiff's tax deed is without effect. The case of *Hairston v. Stinson,* 35 N. C., 479, is not in conflict with this position, because the provisions of the statute under which that case was decided are materially different from the law of 1889.

The plaintiff's third claim, made for the purpose of showing an independent source of title, is derived from an alleged deed of date 24 October, 1904, executed by the State Board of Education to George W. Roper, whose title, if any, under said deed, by *mesne* conveyances, has now passed to the plaintiff. It appears, however, from the case agreed that in 1784 the lands in controversy were granted to Jonathan Herring, and again in 1792 another grant, covering the same lands, was issued to John Hamilton. A similar state of facts was before the Court in the case of *Weston v. Lumber Co.,* 169 N. C., 398, where it is held that a deed of the State Board of Education has no legal effect when grants, covering the *locus in quo,* are shown to have been issued by the State prior to 1825. Hence, plaintiff's claim from this source is without avail. A full and clear discussion of the effect and validity of deeds executed by the State Board of Education will be found in *Weston's case* as reported on the first appeal, in *Weston v. Lumber Co.,* 162 N. C., 165.

From the foregoing it follows that the judgment of the Superior Court must be modified so as to give the plaintiff only that portion of the 399-acre tract lying wholly within the boundaries of Pasquotank County, and covered by the deed executed by the sheriff for the nonpayment of taxes for the year 1889; and award the remainder of said lands in

controversy to the defendants as their respective interests, *inter se,* may be made to appear, conformably with the agreement filed in the cause. Let judgment be entered accordingly. ·Each side will pay its own cost incurred on this appeal.

On both appeals, judgment modified and affirmed.